# United States District Court
### Eastern District of North Carolina
### Western Division

**Case No.  5:20-CT-3083-FL**

FILED

'AUG 2 5 2021

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

Cobey LaKemper

Inmate Number O767480

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

## COMPLAINT
*(Pro Se* Prisoner)

Todd E. Ishee

Kenneth E. Lassiter

Barney Owens

Jury Demand?
■Yes
☐ No

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section IV. Do not include addresses here.)*

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

## I. COMPLAINT

*Indicate below the federal legal basis for your claim, if known. This form is designed primarily for pro se prisoners challenging the constitutionality of their conditions of confinement, claims which are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).*

■ 42 U.S.C. § 1983 (state, county, or municipal defendants)

☐ Action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) (federal defendants)

☐ Action under Federal Tort Claims Act (United States is the proper defendant; must have presented claim in writing to the appropriate Federal agency and received a notice of final denial of the claim pursuant to 28 U.S.C. § 2401(b))

## II. PLAINTIFF INFORMATION

Cobey LaKemper
Name

0767480
Prisoner ID #

Pamlico Correctional Institution
Place of Detention

601 North Third Street
Institutional Address

Bayboro                                   NC                      28515
City                                      State                   Zip Code

## III. PRISONER STATUS

*Indicate whether you are a prisoner or other confined person as follows:*

☐ Pretrial detainee    ■ State    ☐ Federal
☐ Civilly committed detainee
☐ Immigration detainee
■ Convicted and sentenced state prisoner
☐ Convicted and sentenced federal prisoner

Case 5:20-ct-03083-FL   Document 20   Filed 08/25/21   Page 2 of 18

## IV. DEFENDANT(S) INFORMATION

*Please list the following information for each defendant. If the correct information is not provided, it could result in the delay or prevention of service. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.*

Defendant 1: Todd E. Ishee
Name

Commissioner of Prisons
Current Job Title

831 West Morgan Street
Current Work Address

Raleigh               NC          27699
City                  State       Zip Code

Capacity in which being sued: ☐ Individual ☐ Official ■ Both

Defendant 2: Kenneth E. Lassiter
Name

Commissioner of Prisons (former)
Current Job Title

831 West Morgan Street
Current Work Address

Raleigh               NC          27699
City                  State       Zip Code

Capacity in which being sued: ■ Individual ☐ Official ☐ Both

Rev. 5/2017 Prisoner Complaint

## Defendant(s) Continued

Defendant 3: __Barney Owens__
Name

__Warden / Pamlico C.I.__
Current Job Title

__601 North Third Street__
Current Work Address

__Bayboro__          __NC__          __28515__
City            State          Zip Code

Capacity in which being sued: ☐ Individual ☐ Official ∎ Both

Defendant 4: _____
Name

_____
Current Job Title

_____
Current Work Address

_____
City            State          Zip Code

Capacity in which being sued: ☐ Individual ☐ Official ☐ Both

Page 4 of 10

Case 5:20-ct-03083-FL   Document 20   Filed 08/25/21   Page 4 of 18

## V. STATEMENT OF CLAIM

Place(s) of occurrence: _Tabor C.I / Pamlico C.I._

Date(s) of occurrence: _2019 to present_

State which of your federal constitutional or federal statutory rights have been violated:

_First and Fourteenth Amendment (exclusive)_

*State here briefly the FACTS that support your case. Describe how each defendant was personally involved in the alleged wrongful actions, state whether you were physically injured as a result of those actions, and if so, state your injury and what medical attention was provided to you.*

FACTS:

### Introduction

1.) This is an action under 42 U.S.C. §1983 by a prisoner confined at Pamlico Correctional Institution (hereinafter "PCI") located in Bayboro, North Carolina. This action is brought against correctional staff employed by the NC Department of Public Safety/Corrections (hereinafter "DOC") in their individual and official capacities. Plaintiff alleges that Defendant's violated his rights under the Constitution to redress grievances and to due process, and to be free from retaliation when engaging in protected conduct. All of the actions and omissions by the Defendant's claimed herein were carried out under color of state law.

> Who did what to you?

### Jurisdiction

2.) The jurisdiction of this Court over the claims of the Plaintiff is conferred by 28 U.S.C. §1331, in that the claims arose under the Constitution of the United States; and by 28 U.S.C. §1343, in that the claims are for redress of deprivations under color of state law of rights secured by the Constitution.

### Venue

3.) Venue is appropriate in this Court, pursuant to 28 U.S.C. §§ 113(c)

and 1391(b)(2), because the events and omissions giving rise to Plaintiff's claims occured within Pamlico County, NC, located in the Eastern District of North Carolina.

## Preliminary Statement

4.) This is a civil rights action brought by a prisoner expressly and actively denied access to legal resources and assistance, presenting confirmable and indisputable facts not challenged elsewhere in any court in the US, upon information and belief, since no other state prison system imposes similarly harsh and severly primitive conditions in 2021, and most have not in many decades. The Defendant's have created and made-routine, via DOC Policy and manipulation thereof, a by-design condition whereby Plaintiff is extraordinarily hindered or absolutely prohibited, in effect, from redressing grievances in a meaningful way which stands a reasonable chance of being even remotely sufficient and achieving remedy. When established Policy has left vacant some method which allowed or aided effective redress in some manner (i.e. legal research, copies, e.g.), the Defendants then shut-down the method through Policy-manipulation or gross retaliation, thereby pursuing their goal of eliminating redress entirely. Redress, like its brother Sixth Amendment "Access" claim, is not merely filing a legal document, but filing an informed, competent, and Rule-compliant document. This action does not necessarily challenge the following claims as per se or individual claims, but rather collective, in-totality claims—that is, taken together with the other deprivations they are severly unconstitutional.

## Statement of Facts

5.) The Defendants, by-design and through Policy, have since 2011 violated Plaintiff's First Amendment right to redress grievances by maintaining and strictly enforcing an absolute, blanket-ban on law libraries at all prison facilities, including PCI and the six(6) other facilities to which Plaintiff has been assigned.

6.) While there exists the presence of a regular non-legal library at

Page 6 of 10

all prison facilities within the State, the libraries do _not contain any_ _legal material,_ and legal material is expressly prohibited within the library at PCI. As of August 15, 2021, the PCI library contains an inventory of 8,720 books, including topics such as Manga (animé), Fantasy, and Trivia, without a single legal-oriented book due to the Defendants prohibition.

> What was your injury?

7.) The Defendants, by-design and through Policy, do _not provide any mean-ingful "substitute" to law library access._ While DOC does (and has for many years) maintain a contract with North Carolina Prisoner Legal Services (hereinafter "NCPLS") for the purpose of allegedly providing "access to the courts,"[1] it is in reality a completely meaningless and ineffective arrangement in which "services" are _not actually provided;_ along with being an arrangement _benefitting DOC only_ because its contract with NCPLS generally satisfies the _Lewis v. Casey_ standard _on paper and for the sake_ of appearance, while not providing practical or meaningful assistance and only causing prejudice and injury by their empty contractual-existence. In addition to numerous other "services" _not provided,_ NCPLS has expressly declined _and as a matter of course declines_ to provide the following assistance: legal research, print case law, make copies,[2] print/send Federal or State Rules of Civil Procedure, shepardize, respond to specific legal questions, provide tangibly instructive material, submit Amicus Curiae briefs, print/send NC DOC Policy, provide assistance as to conditions-of-confinement civil actions _not corresponding with NCPLS' own selective, discriminatory politics_ (i.e. NC's "ACLU), e.g. In addition to NCPLS being a meaningless and ineffective "alternative" to law libraries and not being an actual advocate for NC prisoners, there exists a weird conflict-of-interest in its contractual-arrangement with DOC, lending to its ineffectiveness.

---

[1] NC DOC Policy, Chapter G, Section .0201
[2] Per Section .0203(h), DOC staff does _NOT provide legal copies along with NCPLS._

Page 7 of 10

8.) The Defendants, by-design and through Policy, in addition to violating Plaintiff's right to redress grievances by maintaining an oppressive blanket-ban on law libraries and not providing any meaningful "substitute", maintain an invasive, strictly-enforced Policy[3] expressly forbidding Plaintiff from receiving assistance from (or providing assistance to) other prisoners regarding matters legal in nature. The Defendants restrictive prohibition includes the exchange of legal material (i.e. instructive manuals, "jailhouse lawyers" handbooks, case law, e.g.), which the Defendants refer to as "bartering and trading."[4] The severity of the disciplinary infraction attached to assisting with legal matters was increased in severity by Defendant Lassiter in 2017 to a more severe "C" infraction[5] from a less-severe "D", fully intended to discourage Plaintiff from free redress via threat of disciplinary proceedings and punishment.

9.) The Defendants, by-design and through Policy, in addition to violating Plaintiff's right to redress grievances by collectively maintaining an oppressive blanket-ban on law libraries, not providing a meaningful "substitute", and prohibiting Plaintiff from receiving legal assistance or material from other prisoners, expressly prohibited Plaintiff from sending/mailing his own account-held, otherwise-unrestricted personal funds to an outside legal source for the detail-conveyed purpose of purchasing and obtaining essential, otherwise-unattainable legal services and material, thereby effectively shutting-down what was Plaintiff's sole remaining outlet for research tasks, legal copies,

---

3 NC DOC Policy, Chapter B, Section .0202(c), "C20"
4 NC DOC Policy, Chapter B, Section .0202(c), "C09"
5 Formerly "D16"

ordering appropriate instructive material, and other desperately-needed legal-oriented services necessary to competently litigate three (3) pending civil actions[6], which Plaintiff has been receiving from an outside vendor since being incarcerated in NC since 2011. Per the provisions of Policy, routinely utilized, Plaintiff submitted a "Request For Special Draw" form (PCI 1.10-1) to Defendant Owens after it was duly investigated and approved by Unit Manager Riggs, seeking to send money to Elite Paralegal Services[7] (hereinafter "EPS") via an institutional money order with an attached Five Dollar ($5.00) fee, transparently-conveying in the reserved "Purpose" space: "Perform legal research and provide legal material and copies. I have three pending civil lawsuits against NC DOC and need the services of EPS in order to litigate, particularly since NCPLS does NOT provide assistance." Plaintiff also conveyed that there existed a need for urgency since Plaintiff had a June 2021 "Exhibit"-deadline to satisfy in an Industrial Commission case[8]. However, Defendant Owens expressly denied Plaintiff's "Draw" request to send funds to EPS, thereby preventing the purchase and receipt of essential legal services.

Retaliatory Motivations

10.) Defendant Owens summary denial of Plaintiff's essential request to send/mail his own personal funds to EPS was malicious and flagrantly retaliatory, fully intended to harass

[6] Industrial Commission, File No.'s TA-27971 and TA-29116, plus the instant lawsuit.

[7] Owned and operated by Mr. Robert Branum, a liscenced paralegal in good standing in Wisconsin. No such public-service legally-geared vendor is known to Plaintiff to exist in NC or hereabouts.

[8] TA-27971, pending since August 2019.

and impede Plaintiff's ability to freely and competently prosecute pending civil actions again-st DOC. Defendant Owens' nefarious intent is demonstrated by:

a.) Despite conveying a need for urgency on April 14, 2021 and after to both Defendant Owens and his designees, Defendant Owens' denial was withheld until April 28, 2021, and then provided only after Plaintiff nearly pestered Unit Manager Riggs, who helpfully retrieved the denial from the DOC file-database. A second denial was issued by Defendant Owens on May 7, 2021;

b.) After writing to Defendant Owens, et al., then submitting a grievance, Plaintiff was provided several different and invalid reasons as the "reason" for the denial, all immaterial and not applicable to Plaintiff's "legal services" 'Draw' request, and a clear manipulation of Policy. Defendant Owens informed Plaintiff, irrelevantly, that Plaintiff could not "incur debt" and that EPS is not a "local financial institution", e.g., while Defendant Owens' designee informed Plaintiff strangely that money could not be sent for "future use";

c.) Plaintiff was treated with open hostility when the money order subject was addressed,[9] and informed by Defendant Owens' designee that Plaintiff would be "stupid to think" that the DOC Trust Fund Office would release Plaintiff's funds to use in a "lawsuit against DOC";

d.) No valid, reasonable, or accurate reason existed to deny Plaintiff's request to send his own money to a reputable legal services vendor,[10] and as such no applicable section of Policy was relied on to justify the denial;

e.) Numerous very trivial "Draw" requests were routinely approved by Defendant

---

[9] With the exception of Unit Manager Riggs.

[10] Established in 2009.

Owens simultaneous to when he denied Plaintiff's request, including many for magazine subscriptions, bikini photos, Dungeons and Dragons paraphernalia, etc.;

f.) On May 24, 2021, Defendant Owens summarily denied" Plaintiff's written request seeking assistance to obtain "copies" of time-sensitive documentary exhibits (intended to submit by a June-deadline), despite and in disregard of Plaintiff informing Defendant Owens that due to the recent "Special Draw" denial Plaintiff would be prevented from copying and submitting the exhibits without his needed assistance, and despite Plaintiff readily consenting to pay a "per page" fee. Defendant Owens cited the section of Policy [12] prohibiting prisoners from copy access as justification for his denial;

g.) Elite Paralegal Services (EPS) is recognized as a valid "legal" source, demonstrated by the PCI mailroom logging EPS-originated mail as "Legal Mail" as a matter of course [13]; and,

h.) Plaintiff has successfully sent personal funds to EPS on several occasions while assigned to prior facilities.

11.) There exists a heavy-handed, pervasive, unlitigated culture of retaliation within NC DOC, so deeply ingrained that correctional staff of all ranks often elect not to acknowledge prisoner constitutional rights. NC DOC is an extraordinarily primitive system with a correspondingly-antiquated, draconian mindset as to prisoner conditions and treatment.

[11] Plaintiff has the original of all documentary-transactions referenced herein, but presently has no "copy" source due to the Defendants prohibitions.

[12] NC DOC Policy, Chapter G, Section .0203(h).

[13] As per Plaintiff's PCI "Legal Mail" history, et al.

Case 5:20-ct-03083-FL    Document 20    Filed 08/25/21    Page 11 of 18

12.) The Defendants, by design and through Policy and manipulation thereof, have demonstrated unambiguous _intent to actively deprive_ Plaintiff of his constitutional rights, and left in the wake direct evidence of improper and retaliatory motive.

Injuries

13.) Plaintiff has suffered _numerous First and Fourteenth Amendment injuries_ consistent with having three(3) active civil cases pending while there exists a pernicious, strictly-enforced blanket-ban on law libraries and other inimical prohibitions fully intended to impede Plaintiff's efforts and eliminate competent, meaningful, and sufficiently informed redress. Some of the injuries are as follows:

a.) _Per se First Amendment injury: deprivation of First Amendment redress_;

b.) Personal legal material confiscated by Defendants designee's on four(4) occasions subsequent to January 2019 as an "option" to receiving a disciplinary infraction for discussing legal matters with and receiving assistance from other prisoners;

c.) Compelled to perform "Extra Duty" (aside from compulsory work assignment) in response to the Defendants designee discovering Plaintiff attempting to receive legal assistance from another prisoner, in addition to being threatened with extended lockdown and suspension of telephone and visitation privileges;

d.) Loss of/wasted $505.00 filing fee and summary appeal dismissal of valid, _non frivolous_ appellate issue _due to Plaintiff being wholly uninformed as to "interlocutory"_ appeals resulting from absence of instructive material or meaningful substitute;

e.) Due to practical realities forced to settle prior Section 1983 civil action[14]

---

[14] _LaKemper v. Solomon_, No. 5:17-CV-73-FDW (W.D.N.C. Sept. 17, 2020)

rather than proceed to jury trial, as "demanded" since the outset of the case[15] and greatly preferred knowing that settlement conditions would inevitably be meager with no reaching consequences, due to the blanket ban, absence of meaningful substitute, and prohibitions (not even a veteran attorney could proceed meaningfully if equally unequipped and deprived);

f.) Plaintiff was effectively prevented from submitting the entirety of pre-trial documentary exhibits in an Industrial Commission case[16], due in part to the Defendants prohibition on Plaintiff obtaining copies and Defendant Owens actively prohibiting Plaintiff from sending funds to EPS to pay for more copies[17] (causing injury to-be-determined but being an injury in fact nevertheless);

9.) Plaintiff has been effectively prevented from including a 'Memorandum of Law' with any and all motions or responses filed in two (2) Industrial Commission actions, thereby causing Plaintiff to lose all except one motions contests, whereas due to the strongly meritorious nature of the cases Plaintiff would have experienced much greater success, upon information and belief, if not having been actively and maliciously deprived of information and authorities. The motions denied by the Commission from 2020 through present were not properly "briefed" and were denied, upon information and belief, due solely to a complete absence of NC civil law to support the motions.

Legal Claims

---

[15] Doc.'s No. 1 and 17, Civil Action No. 5:17-CV-73-FDW (W.D.N.C.)

[16] TA-27971

[17] Plaintiff successfully copied approximately eighty-percent of the total documentary exhibits before running out of funds with EPS and needing to send more, which Defendant Owens prevented.

14.) The violation of Plaintiff's constitutional rights by the Defendants, acting in concert, was carried out maliciously and with retaliatory motivations rather than in any good faith attempt to enforce order or security. _Evidence will demonstrate that Defendant Owens' conduct is not even remotely defendable._

15.) The Defendants actions and omissions as described herein violated Plaintiff's rights to freely and meaningfully petition the government for redress of grievances and free speech and be free of retaliation for engaging in protected conduct, thereby subjecting Plaintiff to intended and executed deprivations under the First and Fourteenth Amendments. Defendants actions and omissions as described herein violated Plaintiff's rights under the regulations and statutes of the State of North Carolina and Plaintiff's right to due process under the Fourteenth Amendment, by subjecting Plaintiff to summary punishment without notice, hearing, or the right to be heard.

16.) _Plaintiff hereby challenges the constitutionality of the following chapters and sections of NC DOC Policy and Procedure:_ (a.) Blanket-ban on law library access and contractual-arrangement with "NCPLS" to allegedly provide "access to the courts" as being meaningless, abhorrently ineffective, a conflict of interest, and not a meaningful or reasonable substitute to law library access;[18] (b.) Prohibition on prisoners assisting one another with legal matters as being overly broad, _unreasonably suppressive of free speech_, and fundamentally flawed in light of the blanket-ban and

[18] In response to Plaintiff's written complaint concerning NCPLS' failure to "assist" as a matter of course, on May 13, 2019 a staff attorney informed Plaintiff that DOC "should still have law libraries", and attributed their lack of assistance and advocacy to inadequate "funding".

absence of meaningful substitute; and, (c) Prohibition on copy access as being too restrictive, fundamentally flawed in light of Facility Head's overly broad discretion in denying "Special Draw" requests and absence of alternative method to obtain legal copies, and being an intentional, by-design impediment to meaningful redress since Plaintiff requires "copies" in order to submit documentary evidence to support litigated claims and satisfy Court/Commission rules.[19]

17.) Defendant Todd E. Ishee is the Director of Prisons and, upon information and belief, primarily responsible for the establish and maintenance of NC DOC Policy and Procedure and thereby responsible for the existence and directed enforcement of the blanket-ban, absence of any meaningful substitute, and other prohibitions referenced herein. Defendant Kenneth E. Lassiter is the former Director of Prisons and, prior to separating from the position, was tasked with responsibilities identical to those of Defendant Ishee, in addition to enhancing the severity of punishment received when prisoners are caught assisting one another with legal matters. Defendant Barney Owens is the warden of PCI where Plaintiff has been assigned since December 2020,[20] and is responsible for directing the enforcement of the acts and omissions described herein at PCI; Defendant Owens is also primarily responsible for retaliating against Plaintiff by actively and maliciously preventing Plaintiff from obtaining access to essential legal services.

[19] Plaintiff is prevented from satisfying EDNC local rules by not including Defendant "copies".

[20] Brad Perritt, the former warden of Tabor C.I. where Plaintiff was assigned from Jan. 2019 to Dec. 2020, died in late-2020, and as such is not transitioned into this Amended Complaint, perhaps in error, since Plaintiff lacks material instructive in civil litigation "party" assignment.

## VI.   ADMINISTRATIVE PROCEDURES

*WARNING: Prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions. 42 U.S.C. § 1997e(a). Your case may be dismissed if you have not exhausted your administrative remedies.*

Have you filed a grievance concerning the facts relating to this complaint?   ■ Yes   ☐ No
    If no, explain why not:

Is the grievance process completed?   ■ Yes   ☐ No
    If no, explain why not:

## VII.   RELIEF

*State briefly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.*

(a.) Issue declaratory judgment stating that the acts and omissions described herein violated Plaintiff's constitutional rights; (b.) Issue an injunction ordering the Defendants to provide Plaintiff with reasonable law library and photocopy access and eliminate or amend policy prohibiting prisoner legal "assistance"; (c.) Award compensatory and punitive damages jointly and severally against all Defendants in an amount to be determined by an enlightened jury; and, (d.) Any other action deemed just and proper.

## VIII. PRISONER'S LITIGATION HISTORY

*The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in forma pauperis in federal court if that prisoner has "on three or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. §1915(g).*

Have you brought any other lawsuits in state or federal court while a prisoner? ■ Yes ☐ No

If yes, how many?   5 ? lifetime

Number each different lawsuit below and include the following:

- Name of case (including defendants' names), court, and docket number
- Nature of claim made
- How did it end? (For example, if it was dismissed, appealed, or is still pending, explain below.)

(a.) LaKemper v. Nichols, 1:07-CV-1451-CAP(NDGA, March 2009). Filed 2007. First Amendment Reading Material/Retaliation claims. Summary Judgment in Plaintiff's favor on all claims. Voluntary dismissal following policy change and monetary award;

(b.) LaKemper v. Nichols, 1:08-CV-3624-CAP (NDGA, March 2009). Filed 2008. First and Fourteenth Amendment claims. Voluntary dismissal during appeal in conjunction with "1451";

(c.) LaKemper v. Solomon, 5:17-CV-73-FDW (WDNC, Sept. 2020). Filed 2017. First and Fourteenth Amendment claims re Mail/Retaliation/SRG Classification. Summary judgment in Plaintiff's favor in part on Mail/Retaliation claims. Settled in Sept. 2020;

(d.) LaKemper v. NC Dept. Pub. Safety, TA-27971 (NC Ind. Comm.) Filed 2019. Tort Claim re Mail-related negligence. Defendant-filed motion to dismiss denied in December 2019. Awaiting trial.

(e.) LaKemper v. NC Dept. Pub. Safety, TA-29116 (NC Ind. Comm.) Filed 2021. Tort Claim re Medical related negligence: Summary suspension of "sick call" for over one month while Plaintiff suffered severe ear infection. Plaintiff's most recent motion denied (due to no authorities included therewith). Dismissal likely due to COVID restrictions defense.

## IX.   PLAINTIFF'S DECLARATION AND WARNING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.**

*Each Plaintiff must sign and date the complaint and provide prison identification number and prison address.*

17 August 2021
Dated

Plaintiff's Signature

Cobey LaKemper
Printed Name

0767490
Prison Identification #

601 North Third Street     Bayboro          NC      28515
Prison Address            City             State   Zip Code