**FILED**

APR 0 5 2024

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____
                    DEP CLK

COBEY LAKEMPER, )

          Plaintiff, )

    v. )        Civil Action No.: **5:20-CT-3083-FL**

ERIK A. HOOKS, et al., )

          Defendants )

## PLAINTIFF'S RESPONSE TO 'DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE'

COMES NOW Plaintiff, pro se, pursuant to Local Civil Rule 56.1(a)(2), responding to 'Defendants' Statement of Material Facts Not in Dispute' in correspondingly numbered paragraphs. Plaintiff hereby responds:

1.) Undisputed

2.) Undisputed. Plaintiff was not issued a formal disciplinary infraction for receiving legal information from and discussing "legal matters" with other prisoners, and thereby not "convicted", due to receiving optional punishment by NCDAC staff: confiscation of legal aid materials and imposition of extra duty aside from compulsory work assignment (Plaintiff's Declaration ¶ 11; Amended Complaint ¶ 13(b)(c), p.12 D.E. 20).

3.) Undisputed.

4.) Undisputed

5.) Undisputed

6.) Undisputed

7.) Undisputed

8.) Undisputed

9.) Undisputed

10.) Undisputed

11.) Disputed. The "Assist Another Person With Litigation Or Legal Matters" disciplinary violation existed as a "D16" disciplinary infraction before Defendant Lassiter became Director of Prisons (RFPD 0032, .0202) then shortly after assuming the directorship Defendant Lassiter amended and increased in severity the former "D16" to a "C20" (RFPD 0009) on 17 July 2017 (RFPD 0006) while discontinuing altogether other "D-level" infractions such as the former "D06", "D12", and "D13" (RFPD 0010, .0202(d))

12.) Undisputed

13.) Undisputed

Case 5:20-ct-03083-FL    Document 79    Filed 04/05/24    Page 2 of 8

14.) Undisputed

15.) Undisputed

16.) Undisputed

17.) Undisputed. Defendant Owens was, however, responsible for the creation and implementation of Pamlico special operating procedures such as "Offender Special Draw Requests" issued by Defendant Owens on 6 July 2021 (RFPD 0001-0005).

18.) Disputed. The majority of the drugs introduced into prisons, particularly North Carolina facilities, are introduced via corrupt NCDAC prison staff. See NC-specific online news articles:
"Observer Investigation Shows Abuse, Corruption In NC Prisons" exhibited at:
https://apnews.com/article/586e19e4b1z64a2590eb88d70b12eelf;
"How NC Prison Officers Fuel Corruption And Abuse" exhibited at:
www.YouTube.com/watch?v=3816PaZ5Kj4;
"Corruption Among Prison Guards In NC Spurred By Low Pay" exhibited at:
https://www.prisonlegalnews.org/news/2018/apr/2/corruption-among-prison-guards-north-carolina-spurred-low-pay/.

Furthermore, since 18 October 2021 NCDAC prisoners have received all incoming non-privileged mail via a third-party mail-processing business in Maryland (Exhibit N) yet there exists not a noticeably-less presence of contraband within the NCDAC prison community (Plaintiff's Declaration ¶ 17). In November and December 2023 alone two (2) prison guards were walked out of Plaintiff's current facility for introducing contraband [D.E. 64, ¶ 9, p.5, verified filing], and NCDAC staff employ camouflaging techniques to shift blame from dirty prison staff to prisoners and prisoners' families and friends.

19.) Disputed, irrelevant. See Plaintiff's disputed ¶18 response.

20.) Disputed. Combating contraband was is the stated "reason" for the employment of a for-profit, kickback-schemed, third-party mail-processing business to process NCDAC prisoner mail, but in reality corrupt prison staff are the primary vectors of contraband and Defendants' "concerns" are exaggerated (See Plaintiff's disputed ¶18 response). In any event, all incoming non-privileged prisoner mail has been scanned since 18 October 2021 (Exhibit N).

21.) Undisputed.

22.) Disputed. TextBehind maintains a pattern, practice, and custom of summarily rejecting and returning non-privileged material legal in nature from non-"Legal" sources (Plaintiff's Declaration ¶12; Sauls Declaration ¶1; Lucas Affidavit; Marty Thompson Declaration ¶2; Wall Affidavit ¶2; Wong Affidavit ¶1; Richardson Affidavit ¶2; Rivers Declaration ¶1; Arnold Declaration ¶1; Z. Thompson Declaration ¶1-2).

23.) Disputed. See Plaintiff's disputed ¶22 response.

24.) Disputed. See Plaintiff's disputed ¶22 response. See also Exhibit P, an EPS memo from 31 August 2023, twenty-two (22) months following the inception of TextBehind, demonstrating ongoing "issues" with non-privileged legal material; Exhibits Q, R, demonstrating by the "Not Legal" notations thereon that TextBehind had previously returned to them non-privileged material despite their status' as a non-privileged source.

25) Undisputed.

26.) Undisputed.


27.) Disputed. Although NCDAC staff routinely enforce the portion of disciplinary procedures designated "C20" and prisoners discovered in violation are routinely punished, not all violations of the "C20" result in issuance of an "infraction" or formal punishment (RFPD 0014, .0205(a)(1)(2)) and punishment materializes in different forms (Plaintiff's Declaration ¶ 11; Wall Affidavit ¶ 1; Marty Thompson Declaration ¶ 1; Richardon Affidavit ¶ 1; Sauls Declaration ¶ 2; Edwards Declaration).


28.) Undisputed.


29.) Undisputed.


30.) Undisputed.


31.) Undisputed.


32.) Undisputed.


33.) Undisputed.


34.) Disputed. Plaintiff submitted a grievance at Pasquotank concerning the former "D16" disciplinary infraction on 3 October 2015, which was issued Grievance No. 3740-01-15-0211 (Plaintiff's Declaration ¶ 2).


35.) Undisputed.

36.) Undisputed that NCDAC generally provides prisoners with GTL tablets which include a version of WESTLAW, however, due to having been incarcerated without pause since 2005 and not exposed to modern technology while confined Plaintiff has been generally unable to navigate the app. NCDAC staff do not provide instruction nor permit more-capable prisoners to provide tutorials to those less-able, which they enforce by not allowing tablets in the dayroom (Plaintiff Declaration ¶5; Rivers Declaration ¶3; Ingle Declaration ¶1; Arnold Declaration ¶2). The GTL system contains numerous and continuous glitch— es, complained about by both staff and prisoners, and the WI-FI constantly shuts down. Tablets also break internally, and when needing repair or replacement prisoners often wait many weeks without tablet or law library app access (Plaintiff Declaration ¶7).

37.) Disputed. The extent of any "assistance" received or obtainable from third-party vendors via the GTL tablet is exclusively accessed by way of the cost-required, character-limited messaging app, which in any event Plaintiff is prevented from regularly accessing due to being indigent (Exhibit M). Furthermore, due to Defendants' not enabling the "Print" feature on either the "Mail" or "Law Library" apps the electronic tablet in no way leads to the production of documentary material (Plaintiff's Dec— laration ¶6). Notably, Defendants' produced as exhibition to this "Statement" the extent of assist— ance obtainable using the GTL tablet in the form of a PACER consult in their Exhibit I at Ex. M, exhibiting an incident whereby on 19 April 2023 at 07:06:31 Plaintiff informed Robert Branum (EPS) that non-privileged mail sent to Plaintiff via TextBehind "was NEVER received" [p. 262, D.E. 74-1].

38.) Undisputed.

39.) Disputed. On 15 February 2021, Defendant Owens replied to a complaint Plaintiff forwarded to him (Exhibit Y) pursuant to the "informal communication" provisions of grievance procedures (Exhibit C, p.1, .0301(a)) concerning improperly-disapproved Christmas cards rejected by Defendant Owens (Exhibits T, U, V, W).

Moreover, Defendant Owens was explicitly aware of Plaintiff's lawsuits prior to disapproving Plaintiff's Special Draw request due, inter alia, to the "Purpose" provided in the applicable space on the form (PCI 1.10-1): "Perform legal research and provide legal material and copies. I have three (3) pending civil lawsuits against NC DOC and need the services of EPS in order to litigate, particularly since NCPLS does _not_ provide assistance" (Exhibit Z).

40.) Undisputed.

41.) Disputed. Due to Defendant Owens' denial of Plaintiff's Special Draw on 15 April 2021, coupled with the advent of TextBehind in October 2021, Plaintiff has been prevented from and has not on any occasion thereafter been able to receive via incoming non-privileged mail needed legal copies, civil litigation research product, or legal aid material required to help sustain Plaintiff's pending litigation efforts (Plaintiff's Declaration ¶ 28). On 30 December 2021, Plaintiff was still trying unsuccessfully to obtain copies of documentary material pertinent to the same lawsuits against NCDAC (Exhibit GG), and later additional litigation efforts in October 2022 (Exhibit HH).

42.) Disputed. Upon request Plaintiff provided Unit Manager Riggs a current February 2021 EPS informational-brochure to keep outlining EPS' services (Plaintiff's Declaration ¶ 22). Plaintiff did not produce a "bill" or "invoice" because a bill and invoice imply debt and debt is prohibited per the provisions of 'Standard Operating Procedures' (RFPD 0002, IV.(f)(6)). Furthermore, 'SOP' additionally provides: "If the offender's request is for any purchase that requires a completed order form to be enclosed with payment, the order form must accompany the Special Draw Request and must be from the company. The order form may not be handwritten" (RFPD 0002, IV.(f)(4)) (emphasis added). After reviewing the brochure Unit Manager Riggs conducted an online review of EPS' website and ratings then approved Plaintiff's request, noting "It's a business" in the margin (Exhibit Z).

Respectfully submitted on this 25 day of March, 2024.

Cobey LaKemper

633 Old Landfill Road

Taylorsville, NC 28681