IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

WESTERN DIVISION

**FILED**

APR 0 5 2024

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____
DEP CLK

| | | |
|---|---|---|
| COBEY LAKEMPER, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.:  **5:20-CT-3083-FL** |
| ERIK A. HOOKS, et al., | ) | |
| Defendants | ) | |

## PLAINTIFF'S STATEMENT OF GENUINE ISSUES
## OF MATERIAL FACT

COMES NOW Plaintiff, pro se, pursuant to Local Civil Rule 56.1, hereby presenting Plaintiff's Statement of Genuine Issues of Material Fact for trial. Plaintiff hereby presents:

1.) The grievance Plaintiff filed at Pasquotank in 2015 concerning the former "D16" disciplinary infraction did not contain "more than one incident" (Plaintiff's Declaration ¶ 2).

2.) Defendant Lassiter amended "Offender Disciplinary Procedures" on 17 July 2017, enhancing the severity of the "Assist Another Person With Litigation Or Legal Matters" disciplinary infraction from a "D16" to "C20" (RFPD 0009, .0202(c)).

3.) When discontinuing "D"-level disciplinary infractions on 17 July 2017, Defendant Lassiter elected not to enhance several former "D" infractions to "C" infractions (RFPD 0010, .0202(d)).

4.) In practice and per custom, the "C20" disciplinary infraction includes the prohibition of prisoner speech regarding any and all matters legal in nature (Plaintiff Declaration ¶ 3; Wall Affidavit ¶ 1; Sauls Declaration ¶ 2; Richardson Affidavit ¶ 1; Marty Thompson Declaration ¶ 1; Edwards Declaration; Wong Affidavit ¶ 2).

5.) On every occasion according to my personal knowledge in which a NCDAC prisoner has expressly requested assistance from NC Prisoner Legal Services ("NCPLS") by reaching out via letter, NCPLS declined to help. The reason invariably cited for not providing assistance is lack of funding or other insufficient resources (Plaintiff Declaration ¶ 4; See also Exhibit G, H, I, J, K, L).

6.) Plaintiff is indigent and cannot afford to pay for the services of an attorney to assist with litigation or legal matters (Exhibit M). With the exception of late-2020 and 2021, Plaintiff has been indigent while confined in NCDAC since June 2011. Since that time Plaintiff has sought the assistance of NCPLS on thirteen (13) occasions for a number of non-frivolous reasons, and the only time they have assisted was conducting discovery in this case (Plaintiff Declaration ¶ 10).

7.) Due to NCDAC staff not providing electronic law library app instruction or permitting prisoner or staff-provided tutorials, Plaintiff has been generally unsuccessful navigating the app and has had to pay other prisoners to conduct needed research (Plaintiff Declaration ¶ 5), a violation of NCDAC disciplinary policy (RFPD 0009, .0202(c), "C09").

8.) Defendants' do not provide access to physical "law libraries or legal texts" as a substitute to the GTL electronic law library app (Exhibit F, p. 2).

9.) The GTL electronic law library app includes a "Print" feature, but it is fully disabled and

prison staff routinely advise that prisoners are prohibited "by policy" from printing any material into paper form (Plaintiff Declaration ¶ 6).

10.) The prisoners assigned to the 2023-established "Offender Law Clerk" position have not been provided legal training nor have been or are familiar with legal matters. Every "law clerk" to date have been Plaintiff's former library coworkers and trained exclusively as regular library clerks. The position, in reality, exists only on paper (Plaintiff's Declaration ¶ 8; Willis Affidavit; Rivera Declaration ¶ 2).

11.) According to policy, "Each facility will have an offender assigned as a Law Library Clerk who will be assigned to assist other offenders with legal materials as needed" (i.e. writing paper, carbon paper, writing utinsels) (NCDAC Policy, Chapter G, Section .0203(j)) (emphasis added).

12.) Plaintiff was required to violate the "C20" disciplinary infraction on numerous occasions in support of this case when communicating clandestinely with other prisoners seeking assistance with legal matters in the form of affidavits and declarations (Plaintiff's Declaration ¶ 9) and, in effect, asked other prisoners to violate NCDAC policy because the evidentiary support assisted Plaintiff with "litigation or legal matters" (RFPD 0009).

13.) On four (4) occasions between January 2019 – January 2022, Plaintiff was compelled by NCDAC staff to relinquish possession of personal legal material and research aids and perform approximately ninety (90) hours of "extra duty" as alternative punishment after being discovered discussing legal matters with and receiving needed legal assistance from other prisoners (Plaintiff's Declaration ¶ 11).

14.) As Commissioner of Prisons from July 2019 – October 2022, then Secretary of Corrections from

October 2022-Present (Ishee Interrogatory No. 2, p.3), Defendant Ishee is responsible for maintaining the "C20" disciplinary infraction as a punishable offense subsequent to Defendant Lassiter's retirement from NCDAC (Defendants Statement Of Material Facts Not In Dispute, No.15, p.3, D.E. 73).

15.) Defendant Lassiter has "no knowledge" of Defendants' policy-justification for the existence of the "C20" disciplinary infraction (Lassiter Interrogatory No.12, p.8) or for prisoners being subject to disciplinary infractions for violations thereof (Lassiter Interrogatory No.13, pp.8-9).

16.) Defendant Lassiter has "no knowledge" of negative effects Defendants' "C20" disciplinary infraction is intended to deter (Lassiter Interrogatory No.15, p.9) or any knowledge of the policy-justification for upgrading the former "D16" to a "C20" (Lassiter Interrogatory No.16, p.10) while he was Director of Prisons.

17.) Defendant Ishee's sole identified reason for the existence of the "C20" disciplinary infraction is because it is unlawful for non-lawyers to practice law (Ishee Interrogatory No.12, p.8).

18.) Pursuant to NCDAC "Inmate Use Of The Mail" policy amended on 13 October 2021 (Ishee Admission No. 27, p.21), beginning on 18 October 2021 all incoming non-privileged mail intended for NCDAC prisoners must be sent to the mail-processing business TextBehind (Exhibit N).

19.) Per the expressed policy of TextBehind and NCDAC policy, legal mail is prohibited (Ishee Admission No. 28, p.21; Exhibit N).

20.) TextBehinds' definition of legal mail, in practice, has routinely included any material legal in nature from any source (Plaintiff Declaration ¶12; Sauls Declaration ¶1; Lucas Affidavit; Marty

Thompson Declaration ¶ 2; Zachary Thompson Declaration ¶ 1-2; Richardson Affidavit ¶ 2; Wall Affidavit ¶ 2; Wong Affidavit ¶ 1), such as personal legal papers, case transcripts, case-supporting affidavits from free-citizens wishing to provide them, court opinions, needed legal copies, e.g., all non-privileged material.

21.) Due to the provisions of the arrangement between NCDAC and TextBehind, pro se prisoners who are indigent are policy-prohibited from sending legal papers to family, friends, or vendors to be copied then mailed back direct to the facility (Plaintiff's Declaration ¶ 13; Defendants' Memorandum Exhibit D (.0305(a)), pp. 18-19, D.E. 74-1), thereby making it difficult and often impossible to access the court in compliance with court rules.

22.) After NCDAC prisoners identified methods sometime in 2022 to obtain certain types of non-privileged legal material via TextBehind by employing camouflaging-efforts (Plaintiff's Declaration ¶ 14; Arnold Declaration ¶ 1), Defendants' amended Mail Policy again on 20 October 2023 eliminating paper mail so that all non-privileged mail is received digitally on the GTL tablets (Plaintiff's Declaration ¶ 15; Rivers Declaration ¶ 1; Ingle Declaration ¶ 2; See also https://www.dac.nc.gov/divisions-and-sections/prisons/offender-mail).

23.) Published accounts of contraband within NCDAC prisons prior to the inception of TextBehind did not identify concerns by Defendant Hooks or former Chief Deputy Secretary David Guice that K2 or other contraband was being introduced via prisoner mail (See Associated Press (AP) 31 May 2017 story titled "Observer Investigation Shows Abuse, Corruption In NC Prisons", exhibited at: https://apnews.com/article/586e19e4b1z64a2590eb88d70b12eelf; See also online 2018 twelve (12) minute YouTube feature titled "How NC Prison Officers Fuel Corruption And Abuse", exhibited at: www.YouTube.com/watch?v=3816PaZ5Kj4; See also 3 April 2018 Prison Legal News (PLN) story titled "Corruption Among Prison Guards In NC Spurred By Low Pay", exhibited at:

https://www.prisonlegalnews.org/news/2018/apr/2/corruption-among-prison-guards-north-carolina-spurred-low-pay/ ).

24.) Due to TextBehinds' practice of returning non-privileged material legal in nature and Defendants' shift to digital-only mail, Plaintiff is effectively prevented from attaching pertinent exhibits in support of legal filings, such as the foregoing news articles in Statement ¶ 23 (Plaintiff's Declaration ¶ 15).

25.) The GTL electronic "Mail" app features a "Print" function designed to translate prisoner mail from digital to paper, but the app is fully disabled and prison staff routinely advise that prisoners are prohibited "by policy" from printing any material into paper form (Plaintiff's Declaration ¶ 6).

26.) NCDAC policy prohibits legal photocopy access (Arnold Declaration ¶ 1; Exhibit F, p. 2 (.0203(h)); Exhibit FF; Exhibit HH).

27.) On 19 April 2023, Plaintiff sent a cost-included GTL electronic message to Robert Branum (EPS) placing an order to receive administrative-type PACER information via the messaging app since the same/non-privileged legal information sent to Plaintiff via TextBehind on 23 March 2023 "was NEVER received" (Defendants' Exhibit 1 at Ex. M, p. 262, D.E. 74-1).

28.) Defendants' have not provided information indicating how TextBehind-scanned paper mail from 18 October 2021 — 20 October 2023 created penological upset (Plaintiff's Declaration ¶ 15; Defendants' summary judgment filings, D.E. 71-74).

29.) Simultaneous to the inception of TextBehind, on 13 October 2021 Defendant Ishee amended

the definition of privileged "Legal Mail" sources, eliminating independent paralegal assistance so that only paralegals "working at the direction of attorneys" are considered privileged (Defendants' Memorandum of Law, B.1, p.5, D.E. 72, .0303(b)(1)).

30.) While there are other state prison systems in the country also limiting prisoners' receipt of personal mail to digital, alternative methods are offered whereby prisoners can freely access legal information and material (Plaintiff's Declaration ¶ 16; Wilson Declaration).

31.) Following the inception of TextBehind and simultaneous prohibitions, it has become customary for NCDAC prisoners to obtain needed legal services and receive legal copies in impermissible and irregular ways, such as bribing other prisoners whose jobs place them in proximity to staff-only copy machines, and bribing NCDAC staff (Plaintiff's Declaration ¶ 18).

32.) Twice in January 2022, in June 2022, February 2023, and July 2023, inter alia, non-privileged legal material mailed to Plaintiff from three (3) non-privileged sources was summarily rejected and returned to the senders by TextBehind staff due to being legal in nature. The first January 2022 rejection caused Plaintiff to suffer a Twenty-Two dollar (22⁰⁰) injury due to a wasted service fee and postage (Plaintiff's Declaration ¶ 19).

33.) As Commissioner of Prisons from July 2019–October 2022, then Secretary of Corrections from October 2022–Present (Ishee Interrogatory No. 2, p. 3), Defendant Ishee is responsible for the creation and implementation of policies and procedures related to prisons (Defendants Statement of Material Facts Not In Dispute, ¶ 15, p.3, D.E. 73), including the establishment of TextBehind to process all non-privileged NCDAC prisoner mail, amendments to Mail Policy including altering the def-inition of privileged "Legal Mail", and elimination of paper mail, inter alia.

34.) Defendant Owens was familiar with Plaintiff's history of civil litigation against NCDAC and its agents prior to denying Plaintiff's "Special Draw" request on 15 April 2021 due to Plaintiff's Settlement Agreement-assignment to Pamlico on 18 December 2020 (Exhibit S, I.c, pp. 2-3).

35.) The grievance Plaintiff filed at Pamlico on 14 February 2021 addressed Christmas card denials all disapproved by Defendant Owens between 30 December 2020 — 8 January 2021 (Exhibit T, U, V, W).

36.) Plaintiff began employing the services of EPS in or around 2012 after being incarcerated in North Carolina, and established an "account" with EPS in or around 2017 (Plaintiff's Declaration ¶ 21).

37.) Pamlico Standard Operating Procedures, "Offender Special Draw Requests", Section 1.10, prohibits prisoners from incurring debt (RFPD 0002, IV.(f)(6)), and the absence of debt precluded Plaintiff from producing a "bill" or "invoice" to accompany Plaintiff's "Special Draw" request (Plaintiff's Declaration ¶ 22).

38.) Prior to Defendant Owens' disapproval of Plaintiff's "Special Draw" request on 15 April 2021, Pamlico mailroom and administrative staff designated mail from EPS as privileged "Legal Mail" and registered it as such in the Mail Record Book (DC-218) legal mail log. See receipts logged on 22 February 2021 (RFPD 0165); 3 March 2021 (RFPD 0166); 21 March 2021 (RFPD 0170); and 13 April 2021 (RFPD 0171).

39.) On 28 April 2021, Unit Manager Riggs informed Plaintiff that on no previous occasion had Defendant Owens ever denied a "Special Draw" request, to his knowledge, and that Plaintiff's disapproval was the first (Plaintiff's Declaration ¶ 23).

40.) On 4 May 2021, Defendant Owens' administrative assistant, Sherri Valerio, advised that Plaintiff must be "stupid to think" that the Trust Fund Office would release Plaintiff's funds for use in a "lawsuit against DOC", then added that Plaintiff would have been smarter to lie on the "Special Draw" form (Plaintiff's Declaration ¶ 24).

41.) While assigned to Pamlico from December 2020 — October 2021, Plaintiff routinely observed Defendant Owens approve "Special Draw" requests for prisoners to pay for photos of partially nude women, magazine subscriptions, Dungeons and Dragons paraphernalia, books, art supplies, wallets, and more (Plaintiff's Declaration ¶ 25).

42.) On 7 May 2021, Defendant Owens responded to correspondence from Plaintiff providing two (2) reasons for disapproving Plaintiff's "Special Draw" request, to wit: "Policy prohibits an offender from incurring debt;" and, EPS does not qualify as a "local financial institution" (Exhibit DD).

43.) Plaintiff never referred to EPS as an attorney or law office (Plaintiff's Declaration ¶ 26; Exhibit Z).

44.) After forwarding correspondence to Defendant Owens on 29 April 2021 seeking assistance obtaining legal photocopies and offering to pay a per-page fee to be deducted from Plaintiff's personal funds (Plaintiff's Declaration ¶ 27), on 24 May 2021 Defendant Owens responded denying Plaintiff's request (Exhibit FF).

45) According to Defendant Owens, prisoners needing copies of documentary material are "given carbon paper to write on to get copies" (Owens Admission No. 1, pp. 13-14).

46.) According to Defendant Owens, the policies and procedures NCDAC staff are "required to follow" when prisoners request to send money via "Special Draw" first includes directing prisoners to "complete the special draw form to the unit manager for verification" (Owens Interrogatory No. 7, p.6), who then forwards the verified form to Defendant Owens "if correct".

47.) On 14 April 2021, Unit Manager Riggs verified then approved Plaintiff's "Special Draw" request (Exhibit Z).

48.) More than eight (8) months after Defendant Owens denied Plaintiff's "Special Draw" request and subsequent to the inception of the restrictive TextBehind, on 30 December 2021 Plaintiff was still trying without success to obtain copies of documentary material needed to sustain litigation against NCDAC (Exhibit GG).

49.) On 24 October 2022, Plaintiff continued trying unsuccessfully to obtain legal copies (Exhibit HH).

50.) As Warden of Pamlico from 2018-2022 (Owens Interrogatory No. 2, pp. 3-4), Defendant Owens was a high-ranking agent of NCDAC who denied Plaintiff's request to send personal funds to a legal services vendor (Owens Admission No. 12, p.17) in an effort to sustain "pending civil lawsuits against NC DOC" (Exhibit Z).

Respectfully submitted on this 15 day of March, 2024.

Cobey LaKemper

633 Old Landfill Road

Taylorsville, NC 28681