

State of North Carolina
Department of Public Safety
Division of Prisons

POLICY & PROCEDURES

Chapter: D — Exhibit O
Section: .0300
Title: **Inmate Use of the Mail**
Issue Date: 03/20/12
Supersedes: 08/16/10

## .0306 PURPOSE

It is the policy of the North Carolina Division of Prisons to permit inmates to correspond with family, friends, officials and other significant government officials consistent with the safety and security needs of each facility. The purpose of this policy is to describe the procedures that will be used by Division of Prisons staff to process inmate correspondence and packages. Policy and procedures will be reviewed annually and updated as necessary. (4487)

The procedures for processing publications received from publishers or community contacts are addressed in the North Carolina Division of Prisons Policy and Procedure D.0100, Publication Received/Possessed By Inmates.

## .0307 GENERAL

(a) The Facility Head will be responsible for developing and implementing facility mail procedures consistent with this policy and provide appropriate notices to inmates concerning these procedures.. The facility procedures must be reviewed annually and updated as necessary to assure compliance with current Division of Prisons policy. (4487)

(b) The Director of Prisons or designee may modify these procedures based on the security considerations of a particular situation.

## .0308 CORRESPONDENCE

(a) Personal mail

(1) Definition: Any mail to or from an inmate that is not defined in D.0308 (b), (c), or (d). Correspondence includes letters, greeting cards, photographs (other than photographs contained in published books, newspapers, or magazines), photographic drawings, packages, etc. Other material received from Publishers are handled under D.0100. Publication Received/Possessed By Inmates policy such as hardback and paperback books, newspapers and magazines.

*(2)* Indigent Inmates - Postage for personal mail from indigent inmates shall be limited to the cost of 10 first-class one ounce letters per month per indigent inmate. Postage for personal mail from inmates without funds will be paid using the Inmate Welfare Fund provided the inmate meets the requirements of being indigent as outlined in DOC Fiscal Policy .1100. (4489) There is no limit on the volume of letters an indigent inmate may receive.



(3) Non-Indigent Inmates - There is no limit on the volume of letters non-indigent inmates can receive or send when he/she bears the cost of mailing. (4488)

(b) Legal Mail (4492)

(1) Definition: Mail to and from attorneys, state and federal courts, the Attorney General of the United States or the Attorney General of North Carolina, the judiciary, the Industrial Commission, consular officials, or legal aid services or a paralegal.

(2) Postage for legal mail from indigent inmates will be paid from the Inmate Welfare Fund *through OPUS/IBS (3PI transaction)* provided the inmate is indigent. No other eligibility requirements apply to postage for legal mail. The 10 letter limitation on personal mail for indigent inmates does not apply to legal mail.

(c) Department of Correction Officials (4492)

(1) Definition: The Secretary of Correction, the Director of Prisons, any member of the Inmate Grievance Resolution Board or its staff, any member of the Board of Correction, the Post-Release Supervision and Parole Commission or its staff, or any official of the Department of Correction in the chain of command above the Superintendent/Warden of the facility to which the inmate is assigned, are defined as DOC officials.

(2) Mail to DOC officials will be accepted within the DOC interoffice mail system (facility mail, bus mail, courier mail) without postage.

(d) Other Government Officials

(1) Definition: Any member of the Congress of the United States or any member of the General Assembly of North Carolina; the President of the United States or the Governor of North Carolina; the Director or any agent of the Federal Bureau of Investigation. Consular officials for inmates who are citizens of the respective country, are identified on the OR11 Personal Characteristic screen and are defined as Other Government Officials.

(2) Mail to other government officials will be considered as personal mail for the purpose of postage.

## .0309 CONTENT AND STRUCTURE OF INCOMING AND OUTGOING MAIL

*(a)* There is no limit on the length, language, content, or source of mail for any inmate except when there is reasonable belief that limitation is necessary to protect public safety or institutional order and security. (4488)



Case 5:20-ct-03083-FL Document 81-16 Filed 04/05/24 Page 2 of 12



(1) Correspondence between inmates is generally prohibited. This general prohibition includes inmates housed in any correctional facility (Federal prisons, county jails, prisons in other states etc.) that seek to correspond with inmates housed in N.C. Division of Prisons facilities. Correspondence between inmates can be approved by both superintendents involved when the inmates are immediate family members or if another compelling reason for the correspondence is presented. The approval process for inmate-to-inmate correspondence requests, when both are housed in a North Carolina Division of Prisons facility, is handled through use of the appropriate OPUS screens. Any request for correspondence between inmates must be entered into the appropriate OPUS screens in the Inmate Control Status (ISS) module.

(2) An individual inmate's privilege to write to a particular person or persons may be withdrawn, by the Superintendent/Warden of the correctional facility to which the inmate is assigned, upon request of the recipient or if the recipient is a minor, at the request of his or her parents or legal guardian. Writing privileges also may be terminated for any of the reasons stated in Section .0310 (e)(1) of this policy. The reason for withdrawal must be stated in a written notice to the inmate that should refer specifically to the letters previously returned. (4488)

(b) Letters to or from inmates may be typewritten, printed, or written legibly in longhand.

(c) Letters from inmates must have their full name and OPUS number and the return address of the facility in the upper left hand corner of the envelope.

(d) It is the purpose of the mail policy to protect citizens in the community from offensive or threatening letters and prevent criminal activities and escape plots from developing through correspondence. To accomplish this, it is the responsibility of each facility mail room to stamp the outside of each piece of outgoing inmate mail (including packages) with the name of the correctional facility (e.g.; mailed from Columbus Correctional Institution). The stamp should be affixed to the front of the envelope above the address and between the return address the postage stamp.

(e) Letters to inmates should be addressed so that the full name and OPUS number of the inmate appears on the envelope. The inmate shall instruct his correspondents to use the correct address as posted on the inmate bulletin boards. The person sending mail to an inmate should be identified in the return address space on the envelope. It is the responsibility of the inmate to advise their correspondents of this requirement.

(f) Non-English Correspondence

(1) Generally, letters to and from an inmate should be written in English. However, correspondence not written in English does not, in and of itself, create reason to believe it threatens security.

(2) Exceptions shall be made for an inmate or a person writing to an inmate if



Case 5:20-ct-03083-FL Document 81-16 Filed 04/05/24 Page 3 of 12



either is determined to be unable to read or write in English, unless the superintendent/warden has reason to believe that the correspondence falls into one of the categories set forth in D.0310 (e)(1).

(3) If the Facility Head has reason to believe the content of the correspondence falls into one of the categories listed in D.0310 (e)(1), immediate action shall be taken to obtain an accurate translation by any means available, including access to local resources such as departmental staff, volunteers, high schools, community colleges, universities, and foreign language associations.

(4) Correspondence not written in English should not be prohibited based on the ability of the inmate or person writing the inmate to read or write in English. The determinative factor should be whether or not the content of the correspondence falls into one of the categories set forth in D.0310 (e)(1).

## .0310 PROCESSING INCOMING AND OUTGOING MAIL

(a) Delivery

(1) The Facility Head will ensure that except for weekends, holidays, and emergency situations all incoming and outgoing mail is held no more than 24 hours and no more that 48 hours for packages. For the purpose of this policy emergency situation refers to any significant disruption of normal operation due to riot, fire, natural disaster or other serious incident. (4495)

(2) For the purpose of identifying addresses and location, Combined Records maintains an inmate's record based on the name of the inmate when the inmate was first committed to the custody of the Department of Correction. The alias screen on OPUS contains other names used by the inmate, including legal name changes. Inmates that have legally changed their name can receive incoming mail and send outgoing mail with the legally changed name and the inmate's OPUS number OR with the legally changed name and the inmate's committed name. Based on the Department's record keeping system, the Division of Prisons finds that even though using either the OPUS number or committed name is allowable, the most efficient manner of sending and receiving mail is listing the inmate's legally changed name and committed name. This information should be used by facility mailroom staff to identify the intended recipient.

(3) If the inmate name is incomplete such that the inmate cannot be located in DOP, the mail will not be opened. This mail will be sent to the U. S. Postal Service for handling through their Mail Recovery Center.

(4) Transferred/Released Inmates (4496)

(A) If mail arrives at the facility for a released inmate, the mail must be forwarded to the inmate's release address as it appears on the IP55 Inmate



Case 5:20-ct-03083-FL Document 81-16 Filed 04/05/24 Page 4 of 12



Release Plan screen in OPUS. Any cost occurred for the forwarding of mail for released inmates shall be handled through the Inmate Welfare Fund.



(B) If the inmate has transferred to another facility, the sending facility shall forward the mail to the receiving facility using the DOC interoffice mail system (facility mail, bus mail, courier mail) within 24 hours of the original receipt of the mail excluding weekends, holidays, or emergency situations as outlined in section .0310 (a)(1).



(C) If the inmate is temporarily absent (out to court, treatment, etc.) the facility shall hold the mail until the inmate's return. Upon the inmate's return the mail should be delivered within the time frames as outlined in section .0310(a)(1)

(b) Inspection (4491/4494)

(1) The Facility Head shall provide for the inspection of all incoming mail by a mailroom officer. The facility head may also provide for the inspection of outgoing mail. The inspection shall serve to prevent the inmate from receiving or sending through the mail any material that threatens to undermine the security and order of the facility or mail that contains contraband or other material which cannot be lawfully sent through the mail. The facility mailroom officer should inpect letters and packages to intercept money order, cash, and checks. (4493)

(2) Personal Mail is read, censored, or rejected based on legitimate institutional interests of order and security. (4488/4491)

(3) Legal Mail from inmates may be inspected by correctional staff for contraband in the presence of the inmate prior to being sealed. If there is any question as to whether an addressee fits the definition of legal mail, the letter/package may be held for not more than 24 hours to resolve the question.(4492)

(4) Legal mail addressed to an inmate may be opened by correctional staff in the presence of the inmate unless waived in writing by the inmate, or in circumstances which may indicate contamination. Correctional staff will ensure that the contents of letters from these persons are free of contraband and are, in fact, official or legal correspondence from the person whose name and return address appears on the outside of the envelope or package. The correspondence shall not be read beyond what is necessary to make this determination. (4492)

(5) Mail to DOC officials may be inspected by correctional staff in the presence of the inmate before being sealed to inspect for contraband. Unless waived in writing by the inmate, or in circumstances which may indicate contamination. (4492)





(6) Mail from DOC officials may be opened and inspected by correctional staff in the presence of the inmate. (4492)

(7) Mail to and from other government officials may be inspected and/or opened as outlined in section D.0310 (b)(5) & (6). (4492)

(c) Censorship (4491)

(1) The Facility Head or designee may prohibit an inmate from sending or receiving any item of personal mail if the content of the item contains any material that threatens to undermine the security and order of the facility, or the mail contains contraband or other material which cannot be lawfully sent through the mail. The reasons for censorship are:

(A) The mail contains threats of physical harm against any person or threats of criminal activity.

(B) The mail threatens blackmail or extortion.

(C) The mail concerns sending contraband in or out of the correctional facility including stamps, or cash or stickers.

(D) The mail concerns plans to escape;

(E) The mail concerns plans to violate departmental rules and policies necessary to maintain security and control;

(F) The mail concerns plans for criminal activity or violations of state or federal laws;

(G) The mail concerns information that if communicated would create a clear and present danger of violence and physical harm.

(H) The mail contains sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution or facilitates criminal activity. Sexually explicit materials are defined as pictorial depictions of sex acts involving violence, sadomasochism, sex with animals, or sex with any person who is under age 18 (or, if the person's age is not stated in the text, who could reasonably be thought to be under age 18). The term sex acts means actual or simulated sexual acts, including sexual intercourse, oral sex, or masturbation. In addition, pictorial materials which depict exposed full frontal view of uncovered human genitalia, exposed genitalia from the rear or the female breast are specifically deemed to be a threat to institutional order, security and safety and a threat to inmate rehabilitation and are prohibited. This prohibition shall not apply to patently medical, artistic, anthropological or educational

commercial publications, including but not limited to National Geographic, works of art displayed in public galleries, i.e., Art News, anatomy texts or comparable materials. Procedures for publications which contain sexually explicit photographs are addressed in the Division's Publication Received/Possessed by Inmates policy, D.0100.

(I) The mail contains photographs which in any way supports, incites, promotes, encourages or advocates any type of gang activity. Procedures for publications received from a publisher which contain pictorials, writings or sign gang language or insignia are addressed in the Division's Publications Received/Possessed by Inmates policy, D.0100



(2) Disapproval letters must be sent to both the inmate and the outside addressee/sender. Both the inmate and the outside addressee/sender will have appeal rights. Using the Disapproval Letter at the end of this policy (attachment #1), a letter must be sent to the inmate and one to the outside addressee/sender informing them of the reason for censorship as listed in .0310 (c)(1) in writing within twenty-four (24) hours. The inmate and outside addressee/sender shall be informed that he or she may appeal the decision to withhold correspondence by presenting written arguments to a committee appointed by the Director of Prisons to resolve the issue. The inmate and outside addressee/sender shall be allowed ten (10) days from the date he or she receives written notice of the correspondence being prohibited in which to appeal to the Director's Correspondence Review Committee. The inmate and outside addressee/sender are given the notice of the decision and appeal rights. (4491)

(3) The Director's Correspondence Review Committee need not meet formally to approve or disapprove the correspondence, but each member will be consulted as to their opinion before a final decision is reached. The Director's Correspondence Review Committee shall make its final decision within thirty (30) days of the date of the inmate's appeal is received. In instances where the inmate or addressee/sender fails to appeal the decision made by the Facility Head or where the Director's committee determines the content of the correspondence falls into one of the categories listed in D.0310 (c)(1) then the correspondence shall be handled like any other personal property that the inmate is not entitled to have in his/her possession as outlined in the Division of Prisons Policy and Procedure Manual F. 0500, Inmate Personal Property.

(4) The Director's Correspondence Review Committee may reverse the decision to withhold mail from the inmate. The Inmate and addressee/sender along with the facility head will be copied on the Director's Correspondence Review Committee decision of appeal using the letter at the end of this policy (attachment #2).

(d) Disposition of Mail or Items within the Mail (4494)



Case 5:20-ct-03083-FL Document 81-16 Filed 04/05/24 Page 7 of 12



(1) Should inspection of the mail determine that any unauthorized item is being mailed out by an inmate or mailed to an inmate, then facility head may authorize everything in the envelope be considered unauthorized. Unless otherwise noted, unauthorized items found will be confiscated in accordance with F.0800 Contraband Control.

(2) Mail to an inmate that appears to be from another inmate as described in D .0306(a) shall be inspected to determine through OPUS if approval has been given. If no approval has been given, the mail shall be returned to the facility head housing the inmate who sent the mail. That facility where the sending inmate is housed shall investigate and take appropriate action.

(3) Mail to an inmate that contains Federal or State income tax refund checks shall be researched thoroughly to determine if the inmate was, or was not incarcerated for the tax period shown on the check. If there is any question, the facility shall log the check and place it in the safe and not deposit the check until a determination is made by contacting the Internal Revenue Service or the State Revenue Department. Federal or State income tax refund checks for inmates who are or have been on Work Release shall be logged and mailed to DOC Work Release Accounting for deposit to the inmate's Work Release account.

(4) Postage Stamps - may not be sent to inmates enclosed through outside personal mail. Postage Stamps that are enclosed in incoming personal mail shall be removed and logged into IBS and returned to the sender with a form letter describing mail procedures. The inmate will receive a copy of the form letter. If there is no return address or if the stamps mailed out is returned to DOP because of an incorrect address, the stamps removed and the value of them logged into IBS as contraband and log them out of IBS to the facility mailroom for use as indigent postage. The other contents of the envelope shall be given to the inmate. Stamps that are concealed or hidden within mailed items in an attempt to avoid detection shall prompt an investigation and appropriate disciplinary action.

(5) Money – Enclosed in outside personal mail should be sent by money order, cashiers check or certified check. Cash that is enclosed in incoming personal mail shall be removed and logged into IBS and returned to the sender with a form letter describing mail procedures. The inmate will receive a copy of the form letter. If there is no return address or if the cash mailed out is returned to DOP because of an incorrect address, the cash shall be deposited to the IBS Contraband Account which shall be swept to the Inmate Welfare Fund. The other contents of the envelope shall be given to the inmate. Cash that is concealed or hidden within mailed items in an attempt to avoid detection shall prompt an investigation and appropriate disciplinary action. Procedures for the proper handling of money are contained in the Department of Correction Fiscal Policy and Procedures Manual .1000, Inmates' Trust Fund.



(6) Social Security or Supplemental Security Income checks. See Inmate Banking Manual for procedures on returning Social Security and Supplemental Security Income Checks.

(7) Veteran's Compensation checks - Limitations on payment of Veteran's Compensation checks to inmates incarcerated for conviction of a felony are addressed in Title 38 of the United States Code, Section 3113. The following guidelines shall be used to handle veteran's benefits checks received by an inmate:

(A) Deposit the check in the inmate's trust fund following existing procedures.

(B) Send a letter with the following information to V. A. Regional Office, 251 North Main Street, Winston Salem, NC 27155.

(i) Date of Conviction
(ii) Date of initial admittance to prison
(iii) Projected release date
(iv) Dates of escape and recapture, if any
(v) Whether or not the inmate is participating in a work release program or is residing in a halfway house, and
(vi) A copy of all Judgments and Commitments for the current term of imprisonment.

(C) The V. A. Regional Office will then make a determination regarding the inmate's continued eligibility and/or the amount of the benefit check. If the V. A. Office determines that an inmate has received an overpayment, they will request repayment by the inmate of the overpayment. If the inmate does not repay the overpayment, the V. A. Office will reduce the inmate's future checks to collect the overpayment.

(8) Mass Mailings -Any mass mailings that attempt to reach a majority of the inmate population at a facility is inherently suspect. If the Facility Head has good cause to believe that such an attempt has been initiated in order to cause disruption or otherwise threaten the order and security of the facility, the mail in question will be censored. If necessary, based on_security consideration stated directly above, the Facility Head shall refuse delivery of this mail without notice to the inmate addressee. Such mail may be returned to the sender if return postage is guaranteed, or destroyed at the facility. No notice is provided to the inmates in such circumstance.

(9) Advertising "junk" mail - Including but not limited to promotional offers, drawings, sweepstakes, lotteries, and campaigns which propose a commercial transaction and is NOT addressed to a specific individual shall be withheld. No



notice is provided to the sender or the inmate in such circumstances. Such "junk" mail may be returned to the sender if return postage is guaranteed, or destroyed at the facility The facility shall contact their local U. S Postal Service office to request no delivery of this type of mail.

(e) Record Keeping

The facility mailroom staff will keep records concerning the sending and receiving or legal mail and packages. They will also record mail received for any inmate that contains negotiable instruments.

(1) Incoming Mail: The mail officer shall record in a separate mail record book (DC-218)

(A) Incoming legal mail and packages; and

(B) Negotiable instruments such as:

(i) checks in payment of an inmate's settlement or claim;

(ii) state and federal income tax refunds;

(iii) Veteran's Administration payments; and

(iv) any other negotiable instrument other than personal money orders and trust fund transfer checks.

(C) The facility mailroom officer must record his/her name in the mail record book at the beginning of each day. The officer must also record his/her initials beside each entry recorded for the day

(D) Each inmate must sign the recorded entry in the Mail Record book (DC-218) for legal mail, packages, or mail containing negotiable instruments. The inmate must also endorse any negotiable instruments. The officer distributing legal mail, packages, or mail containing negotiable instruments must initial beside the inmate's signature. Endorsed negotiable instruments are returned to the mailroom where the facility restricted endorsement stamp is added. The facility mailroom officer will run a calculator tape showing total number of receipts, total dollar amount, and balance. The negotiable instruments, calculator tape and other receipts will be delivered to the trust fund staff.

(2) Outgoing Mail: The mail officer shall keep a record on a separate Form DC-218 showing the destination of all legal mail and packages mailed by an inmate. The mailroom officer mailing such items shall sign his/her name beside each entry.



Case 5:20-ct-03083-FL Document 81-16 Filed 04/05/24 Page 10 of 12

constitutes a threat to the order and security of the facility or which cannot be lawfully sent through the mail. This inspection shall be done in the presence of the inmate. If cleared for mailing, the items shall be sealed and placed in the mail by the sender in the presence of the inspector. If not cleared for mailing, the facility head shall follow the steps outlined in the censorship disposition sections of this policy .0310 (c) & (d).

(b) Packages Sent to Inmates. Shall be subject to inspection as outlined in the inspection section .0310 (b) of this policy Additional items sent to inmates shall be subject to inspection and handling by a mailroom officer. The inspection shall be done in a secure location in the facility and shall not be done in the presence of the inmate except when the packages are consider legal mail or mail from Departmental or Other Government Officials. If the officer determines that the package or envelope contains contraband or other material that threatens the order and security of the facility, this material shall be confiscated and the facility head shall follow the steps outlined in the censorship disposition sections of this policy .0310 (c) & (d).

(c) Items that may be received by an inmate through a package are:

(1) Clothing approved for use while incarcerated;

(2) Clothing to be used upon release (if received within 15 days of a scheduled release date);

(3) Musical instruments (when approval is granted in advance from the Facility Head);

(4) Unframed photographs, not to exceed 8" X 10";

(5) Legal papers;

(6) Publications which may be received under Publications Policy D .0100.

(7) Religious items (refer to DOP Religious Practices Reference Manual);

(8) Documents and Negotiable instruments such as checks in payment of an inmate's settlement or claim that require the inmate's endorsement.

(d) COD Packages And/Or Mail Sent to Inmates. No COD packages or mail with postage due will be accepted for any inmate and no inmate shall be authorized to send packages COD or mail with postage due.

(e) Inmate Request for Other Items. Any inmate may request in writing permission from the Region Director to receive through the mail a specific item that is not otherwise authorized. This request shall be forwarded through the chain of command to permit the views of region staff to be expressed.



Case 5:20-ct-03083-FL Document 81-16 Filed 04/05/24 Page 11 of 12

(e) Inmate Request for Other Items. Any inmate may request in writing permission from the Region Director to receive through the mail a specific item that is not otherwise authorized. This request shall be forwarded through the chain of command to permit the views of region staff to be expressed.

Robert C. Lewis 3/20/12
Director of Prisons Date

d.0300_03_20_12.doc



Case 5:20-ct-03083-FL Document 81-16 Filed 04/05/24 Page 12 of 12