COBEY LAKEMPER,
                    Plaintiff,

        v.

ERIK A HOOKS, *et al.*,
                    Defendants.

**REPLY TO RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants Hooks, Ishee, Lassiter, and Owens (hereinafter "Defendants"), by and through Undersigned Counsel, and hereby submits this Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment.

## I.    PLAINTIFF HAS CONCEDED CERTAIN ARGUMENTS

Generally, when a party fails to respond or address an argument, the argument is considered to be conceded. *See Gibbs v. Smitherman*, 2012 WL 6093805 at *8 (E.D.N.C. Dec. 7, 2012) (collecting cases); *Kinetic Concepts, Inc. v. Convatec, Inc.*, 2010 WL 1667285 at *8 (M.D.N.C. April 23, 2010) (collecting cases); *see also Ledford v. Daimler Trucks N.A., LLC*, 2021 WL 1316074 at *1 (W.D.N.C. April 8, 2021) (failure to respond to motion to dismiss argument results in dismissal); *Hewett v. Shapiro & Ingle*, 20212 WL 1230740 at *3 (M.D.N.C. April 12, 2012) (same).

It does not appear that Plaintiff addressed the dismissal of Defendant Hooks, or his lack of personal involvement in this case. Instead, Plaintiff has filed a separate Motion

1

to Dismiss Defendant Hooks.  DE-82.  Plaintiff did not state whether such dismissal was with prejudice or without prejudice.  *Id.*  Regardless, since Plaintiff has failed to address the issues, and show how Defendant Hooks was personally involved, the claims against him should be dismissed with prejudice.  Therefore, to the extent that Defendant Hooks was not previously dismissed with the filing of the Amended Complaint, he should be dismissed now.

Regarding the retaliation, Plaintiff failed to address Defendants' arguments that Defendant Owens[1] was not aware of Plaintiff's prior lawsuits or prior grievances. Therefore, without being aware of such protected activity, he cannot be said to have retaliated as a result of it.  Therefore, the Court should dismiss Plaintiff's retaliation claim.

Regarding qualified immunity, Plaintiff failed to address Defendants' argument that his claims involved clearly established constitutional rights.  Therefore, Defendants should be entitled to qualified immunity.

## II. PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES REGARDING HIS INMATE LEGAL ASSISTANCE CLAIM

In response to Defendants' argument that Plaintiff failed to exhaust his administrative remedies regarding his inmate legal assistance claim, he now claims that

---

[1] When drafting this Reply, Undersigned Counsel realized that he mistakenly used "Barney" in place of "Owens" in some places within Defendants' Memorandum in Support of Motion for Summary Judgment. Undersigned Counsel apologizes for the confusion and typographical error, but every reference to Barney refers to Defendant Barney Owens.

he submitted a grievance that was dated October 3, 2015.  DE-78 at 3.  Furthermore, he claims that the grievance was "rejected" for containing more than one incident.  *Id.*

First, if the grievance for which Plaintiff is attempting to use to satisfy his exhaustion requirement dates back to 2015, then Plaintiff's claims are outside the statute of limitations.  While North Carolina's three-year statute of limitation governs Plaintiff's claims, "the date the cause of action accrues is determined under federal law." *Fayemi v. Offerman*, 99 Fed. Appx. 480 (4th Cir. 2004).  "Under federal law, a cause of action accrues and the statute of limitations commences 'when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.'" *Id.*

If Plaintiff knew enough to submit a grievance about the inmate legal assistance claim, and is attempting to use that grievance to satisfy his current legal assistance claim, then he certainly had sufficient facts about the alleged harm done to him that he should have submitted a claim well before his 2020 Complaint.  In reality, as Plaintiff stated in his brief, the current legal assistance claim was not the focus of his Complaint, but merely dicta that has since transformed into an independent claim after his primary claim was dismissed on frivolity.  To the extent the Court is going to continue to consider this as an independent claim, the Court should dismiss it as time-barred as Plaintiff has shown that he had sufficient facts to timely bring the claim and failed to do so.

Second, Plaintiff admits that his sole grievance related to the inmate legal assistance claim from 2015 was rejected.  However, inmates are required to appeal a

rejected grievance.  *See Murray v. Dobyns*, 2013 WL 3326661 at *3 (M.D.N.C. July 1, 2013) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)); *see also Moore v. Bennette*, 517 F.3d 717, 721 (4th Cir. 2008) (concluding plaintiff failed to exhaust administrative remedies where prison official rejected grievance); *McNeill v. Gaddy*, 2019 WL 4723329 at *3 (M.D.N.C. Sept. 26, 2019) (a rejected grievance does not constitute a reason to excuse the exhaustion requirement); *Seamons v. Guise*, 2017 WL 190101 at * 2 (W.D.N.C. Jan. 17, 2017) (same); *Velarde v. McDonald*, 2014 WL 12495280 at *2-3 (E.D.N.C. Feb. 24, 2014) (same).  Therefore, since Plaintiff admits that the sole grievance he submitted on this issue was rejected, and he failed to appeal it, Plaintiff has failed to exhaust his administrative remedies on his legal assistance claim.

## III.  DAC POLICIES DO NOT VIOLATE THE FIRST AMENDMENT

### A.  Inmate Legal Assistance

In his response, Plaintiff admits that similar policies are in place in other states and that courts "rarely intervene."  DE-78 at 25.

First, none of the cases cited by Plaintiff show that Defendants do not have a legitimate penological purpose in upholding North Carolina law against the unauthorized practice of law, preventing the introduction/distribution of contraband in prison facilities, and preventing the abuse of legal assistance.

Second, Plaintiff claims that Defendants do not provide an alternative to discussing legal matters with other inmates.  However, Defendants do not have a provide

4

an alternative means of discussing legal matters *with other inmates*, but instead, must only provide an alternative means of seeking legal advice, which they have done through the agreement with PLS and the provision of Westlaw services.

Third, Plaintiff claims that "prison staff are sufficiently-trained and keen to identify and easily distinguish when prisoners are harmlessly exchanging non-disruptive legal speech." DE-78 at 26. To the contrary, Plaintiff has provided no evidence that correctional staff undergo any legal training to determine whether an inmate's "legal speech" constitutes the unauthorized practice of law. Furthermore, Plaintiff has provided no evidence that discerning between consent and coercion is an easy task. To the contrary, there are plenty of inmate lawsuits wherein inmates claim that other inmates coerced or extorted them in some way, and prison staff failed to protect them. These lawsuits show that preventing coercion and extort is hard enough without adding a new method (legal work).

Fourth, the alternative language proposed by Plaintiff would not satisfy the penological interest. Specifically, by merely stating "to litigate for another person" would fail to encompass the provision of legal *advice* to another inmate by a non-lawyer inmate, which is still illegal under North Carolina law. Therefore, Plaintiff's proposed language is too lenient. To the contrary, the current language is consistent with North Carolina law and other jurisprudence on this subject, including other courts that have upheld other state prison's similar prohibitions.

B. <u>Legal Mail</u>

In his response, Plaintiff seems to acknowledge that the policies themselves to not actually violate his rights. In fact, he calls them "de facto" prohibitions. DE-78 at 27. In reality, the policies put in place do not violate Plaintiff's First Amendment rights. The policies allow him to receive legal mail from legal professionals at his facility, and to receive all other mail (including legal materials from non-legal individuals) through TextBehind. Thus, Plaintiff has not shown that the policies themselves violate his First Amendment rights.

To the extent that Plaintiff is claiming that other individuals (not Defendants) are not correctly applying those policies, Plaintiffs claims would be against those individuals – not Defendants. Thus, Plaintiff has failed to show the personal involvement of Defendants in any alleged (but denied) violation of his First Amendment rights.

Lastly, the fact that contraband is brought into prison through means other than mail (e.g. corrupt officials, etc.) does not change the fact that there is a legitimate penological interest in preventing the introduction of contraband through mail.

## IV. RETALIATION

As noted above, Plaintiff failed to show that Defendant Owens was aware of Plaintiff's lawsuits and grievances. Therefore, even if he had engaged in protected activity, Plaintiff cannot show a causal connection between the alleged protected activity and the alleged retaliation.

Furthermore, while Plaintiff claims that Defendant Owens' "offered a laundry list of inapplicable and irrelevant reasons for the denial," Plaintiff has failed to show that those reasons for the denial were in fact inappropriate. To the contrary, Plaintiff attempts to throw legal labels and conclusions out there in hopes that the Court allows his claim to proceed. However, when those legal labels and conclusions are stripped away, we are left with the facts that Plaintiff attempted to send money for reasons not allowed by policy. Plaintiff's response did nothing to curb that. While Plaintiff may not like the policy, it does not change the fact that Defendant Owens complied with it. Thus, there is no causal connection between the alleged protected activity and the alleged retaliation.

## V.      LACK OF INJURY

For the inmate legal assistance claim, Plaintiff claims to have been given an "option" of either receiving a disciplinary infraction or to relinquish "possession of personal legal material and research aides and perform…extra duty after being discovered discussing legal matters with and receiving needed legal assistance from other prisoners." DE-78 at 9. Plaintiff claims that this option was imposed by "NCDAC officials Ward, Roberts, Perry, and Burns." *Id.* However, this "option" was not imposed by Defendants. Thus, Defendants did not cause any injury to Plaintiff.

For the legal mail claim, Plaintiff claims to have been injured because "on five (5) occasions between January 2022-January 2024, non-privileged legal materials mailed to Plaintiff from three (3) non-privileged sources was summarily rejected and returned to

7

the senders *by TextBehind* due to being legal in nature." DE-78 at 16 (emphasis added). As shown herein, the policies implemented by Defendants would allow for Plaintiff to obtain non-privileged materials through TextBehind. Therefore, since Plaintiff alleged that it was TextBehind (not Defendants) that rejected his materials, it was not Defendants that caused him any injury.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted.

Respectfully submitted this the 19th day of April, 2024.

JOSHUA H. STEIN
Attorney General

/s/ Alex R. Williams
Alex R. Williams (N.C.S.B. No. 41679)
Special Deputy Attorney General
N.C. Department of Justice
Public Safety Section
P.O. Box 629
Raleigh, North Carolina 27699-9001
Telephone: 919-716-6528
Facsimile: 919-716-6761
awilliams@ncdoj.gov

8

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, and that I will cause the foregoing document to be served on all non-CM/ECF participant(s) by depositing a copy in the U.S. Mail, postage prepaid, addressed as follows:

Cobey LaKemper
OPUS No. 0767480
Alexander Correctional Institution
633 Old Landfill Rd.
Taylorsville, NC 28681
*Pro Se Plaintiff*

This the 19th day of April, 2024.

/s/ Alex R. Williams
Alex R. Williams
Special Deputy Attorney General

9